IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**RUTH WILLIAMS, Individually**  **PLAINTIFF**
**and as Parent and Legal Guardian**
**of N.W., a minor**

v.                              Case No. 2:22-CV-00141-LPR

**ARKANSAS DEPARTMENT OF**
**HUMAN SERVICES;**
**MISCHA MARTIN, in her official capacity**
**as Director of Arkansas Department**
**of Human Services Jackson County**
**Division; and**
**APRIL STOKES, in her official capacity**
**as an Agent on behalf of the Arkansas**
**Department of Human Services Jackson**
**County**                                   **DEFENDANTS**

## ORDER

On September 21, 2023, this Court issued an Order to Show Cause to Plaintiff's counsel, Alvin Simes.[1] The Order explained that:

> Plaintiff's counsel must SHOW CAUSE on or before November 3, 2023, for why he should not be sanctioned under Federal Rule of Civil Procedure 11(b) for the apparent intentional misrepresentation regarding "diligent efforts" made in the November 3, 2022 Motion for an Extension of Time and the frivolous contention that "[t]he Federal Rules . . . allow[] the Plaintiff 120 days to make service" made in the January 11, 2023 Brief in Support of Plaintiff's Response to Defendants' Motion to Dismiss.[2]

---

[1] *See* Order (Doc. 28) at 15–16.  The Order to Show Cause was part of the Order dismissing the case.  *See id*.  The Court is aware that Federal Rule of Civil Procedure 11(c)(2) requires that "[a] motion for sanctions must be made separately from any other motion . . . ."  But this provision speaks to "motion[s]" as opposed to *sua sponte* court orders.  Such court orders are addressed in Rule 11(c)(3), which does not have the separate-document requirement.  All this provision requires is that the allegedly problematic conduct be "specifically described in the order . . . ."  Fed. R. Civ. P. 11(c)(3).  As discussed in this instant Order, the allegedly problematic conduct was specifically described in the Order dismissing the case and directing Mr. Simes to show cause for why he should not be sanctioned.  *See* Order (Doc. 28) at 3–15.

[2] Order (Doc. 28) at 15–16 (alterations and omissions in original).

With respect to the apparent intentional misrepresentation by Mr. Simes regarding diligent service efforts, the Court painstakingly explained the specific problematic conduct at issue in the Order.[3] The same is true for Mr. Simes's frivolous contention regarding the number of days allowed to effectuate service under the Federal Rules of Civil Procedure.[4]

The Court need not repeat the earlier Order's full recitation here. Rather, the Court adopts and incorporates that recitation from the earlier Order. In summary, the Court issued the Order to Show Cause because the Court believed that: (1) the November 3, 2022 Motion for an Extension of Time to Make Service (which was signed by Mr. Simes) contained an intentional lie—specifically, the Motion stated that Mr. Simes "ha[d] made diligent efforts to make service upon the Defendants" when, in reality, Mr. Simes had, at that point, made no efforts at all related to service; and (2) the January 11, 2023 Brief in Support of Plaintiff's Response to Defendants' Motion to Dismiss (also signed by Mr. Simes) contained a misrepresentation so egregious that the misrepresentation must have been intentional or grossly reckless—specifically, the Brief stated that Federal Rule of Civil Procedure 4(m) provides for a 120-day service window when, in reality, the Rule is crystal clear that a 90-day service window applies.[5] The Court held a show-cause hearing on November 3, 2023.[6]

On October 25, 2023, Mr. Simes filed two documents in response to the Order to Show Cause: a Motion to Deny Court Sanctions and an accompanying Brief in Support.[7] Neither document addresses in any way the Court's concerns about the diligent-efforts representation made

---

[3] *See id.* at 2–6, 9, 12–13, 15.

[4] *See id.* at 6–7, 9, 12–15.

[5] *See id.* at 12–16.

[6] *See* Clerk's Minutes (Doc. 35).

[7] *See* Pl.'s Mot. to Deny Sanctions (Doc. 31); Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32).

by Mr. Simes in his November 3, 2022 Motion for an Extension of Time to Make Service.[8] As for the Court's concern regarding the misrepresentation of Rule 4(m) in the Brief, the sum and substance of the filings are that "[c]ounsel was under a mistaken belief that Plaintiff had 120 days to make service . . . ."[9] Confusingly, however, counsel also states that he "has a long history of legal practice in the Federal Court and has never made this legal error."[10] In any event, neither the Motion nor the Brief clearly explain why counsel was operating under a mistaken impression.[11] (Nor do the documents discuss whether counsel actually consulted the Federal Rules of Civil Procedure and read Rule 4(m).[12]) The Court's best attempt to decipher Mr. Simes's submissions suggests that Mr. Simes confused the 90-day service window of Federal Rule of Civil Procedure 4(m) with the 120-day service window of Arkansas Rule of Civil Procedure 4(i).[13]

On November 2, 2023, a day before the show-cause hearing, Mr. Simes filed amended versions of the two documents just discussed.[14] The new Brief contains no changes from the original Brief.[15] And the Amended Motion is mostly identical to the original Motion, apart from

---

[8] *See generally id*.

[9] *See* Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32) at 1.

[10] *See id*. at 2.

[11] *See generally* Pl.'s Mot. to Deny Sanctions (Doc. 31); Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32).

[12] *See generally id*.

[13] *See* Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32) at 3. What Mr. Simes actually said was that he "was conflicting FRCP 4(m) with Arkansas Rule of Procedure 4(m) . . . ." *Id*. But there is no Arkansas Rule of Civil Procedure 4(m). Arkansas Rule of Civil Procedure 4(i)(1) provides that "[i]f service of process is not made on a defendant within 120 days after the filing of the complaint or within the time period established by an extension[,] . . . the action shall be dismissed as to that defendant . . . ." Sadly, Mr. Simes's mis-citation is not surprising in the least. Mr. Simes's submissions responding to the Order to Show Cause are riddled with so many spelling, grammar, syntax, and citation errors that it is not worth the Court's time to identify each of them. The Court wishes to be clear. No one is perfect, and we all make errors from time to time. But the frequency of the errors in Mr. Simes's written submissions responding to the Order to Show Cause strongly suggests an indifference on Mr. Simes's part with respect to the professional deficiencies that animated the Order to Show Cause in the first place.

[14] *See* Pl.'s Am. Mot. to Deny Sanctions (Doc. 33); Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34).

[15] *See* Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34) at 1–3.

adding three new paragraphs and an exhibit.[16]  One new paragraph states that "Plaintiffs' [sic] Counsel was unaware at the time he was engaged in the service of process of the Defendants of the 2015 amendment change to Federal Rules [sic] of Civil Procedure 4 reducing the allotted time to make service from 120 days to 90 days."[17]  Another new paragraph discusses a murder case for which Mr. Simes was counsel that was set for trial in state court "for September 5, 2023[,] through September 21, 2023."[18]  The new exhibit, a state court scheduling order, shows a jury trial set for "September 5 through 8 and 18 through 21, 2023 . . . ."[19]  The Amended Motion does not explain what a 2023 trial schedule has to do with service of process in the fall of 2022 or briefing in January of 2023.[20]  And the last new paragraph is just a conclusory statement of the legal mistake being one of good faith.[21]  To be clear, none of the four documents submitted prior to the hearing addresses the Court's concern about Mr. Simes's signed statement that he made diligent service efforts prior to November 3, 2022.[22]

The Court held the show-cause hearing on November 3, 2023.[23]  One of the first things the Court did was confirm that Mr. Simes understood the Order to Show Cause.[24]  Mr. Simes said that he did.[25]  The Court then invited Mr. Simes to "either rest on [his] briefs or make any statement

---

[16] *Compare* Pl.'s Mot. to Deny Sanctions (Doc. 31) at 1–2, *with* Pl.'s Am. Mot. to Deny Sanctions (Doc. 33) at 1–2, 4.

[17] Pl.'s Am. Mot. to Deny Sanctions (Doc. 33) at 2.

[18] *Id*.

[19] *Id*. at 4.

[20] *See id*. at 1–2.  Mr. Simes could not shed light on this issue at the show-cause hearing, either.  *See* Tr. (Rough) of Show-Cause Hr'g at 11–13.

[21] The amendments do not fix any of the errors referenced in note 13, *supra*.

[22] *See generally* Pl.'s Mot. to Deny Sanctions (Doc. 31); Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32); Pl.'s Am. Mot. to Deny Sanctions (Doc. 33); Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34).

[23] *See* Clerk's Minutes (Doc. 35).

[24] Tr. (Rough) of Show-Cause Hr'g at 1.

[25] *Id*.

[he] would like in terms of setting the record straight . . . ."[26] Mr. Simes chose to "rest on [his] brief."[27] The Court then called Mr. Simes to the witness stand, placed him under oath, and began its own examination.[28] The Court asked questions related to both areas of alleged misconduct.[29]

After the Court's questioning—and once Mr. Simes returned to his seat at counsel's table—the Court once again invited Mr. Simes to make any additional record he wanted.[30] In response to this request, Mr. Simes did not add much, but briefly said that (1) he stood on his Motion, (2) he didn't collect a fee in this case, (3) he was just trying to help the Plaintiff because she was a member of a pastor friend's church, (4) the Plaintiff can refile her lawsuit because it was dismissed without prejudice, and (5) the Defendants have not been prejudiced by his actions.[31] He acknowledged that his "mistake[s]" were "embarrassing[,]" but he argued that "[s]anctions aren't warranted . . . ."[32]

Based on (1) the record in this case, (2) Mr. Simes's written responses to the Order to Show Cause, (3) Mr. Simes's answers to the Court's questions at the show-cause hearing, and (4) Mr. Simes's other statements at the show-cause hearing, the Court makes the following findings of fact and conclusions of law.

## I.     The Rule 4(m) Issue

1.     Mr. Simes admits that his January 11, 2023 Brief in Support of Plaintiff's Response to Defendants' Motion to Dismiss erroneously told the Court that Federal Rule of Civil Procedure

---

[26] *Id.* at 2.

[27] *Id.*

[28] *See id.*

[29] *Id.* at 2–15.

[30] *See id.* at 16 ("Is there anything else at all you wish to say?  Again, you are more than welcome to make a record if you'd like.").

[31] *See id.*

[32] *See id.*

4(m) provides for a 120-day service window.[33] Mr. Simes admits that the Rule clearly provides for a 90-day service window.[34] Mr. Simes admits that—weeks before he filed the offending Brief—opposing counsel had filed a Brief in Support of a Motion to Dismiss that very clearly explained that Federal Rule of Civil Procedure 4(m) provides for a 90-day service window.[35] And Mr. Simes admits that he had an obligation to make sure anything in his briefing was accurate.[36]

2. Mr. Simes did not look up Federal Rule of Civil Procedure 4(m) before making the misrepresentation in his Brief.[37] The Court reaches this finding of fact despite Mr. Simes's testimony that "when [he] was preparing [his] brief[,]" he looked up the Rule in "an old federal book and did not realize that the 2015 amendment had" changed the service window in Rule 4(m) from 120 days to 90 days.[38] The Court finds Mr. Simes's story incredible for the following reasons.

3. First, in Mr. Simes's initial written response to the Order to Show Cause, Mr. Simes did not suggest that he read the old Rule instead of the new one.[39] Indeed, Mr. Simes did not suggest the source of his mistake had anything to do whatsoever with the 2015 amendment to the Federal Rules of Civil Procedure.[40] Rather, Mr. Simes only claimed that he confused the service window under the Federal Rules with the service window under the Arkansas Rules.[41] Even when he provided an amended response, that response did not state that he looked up the Rule in an old

---

[33] *See id.* at 3–5.

[34] *See id.*

[35] *See id.* at 4–5; Defs.' Mot. to Dismiss (Doc. 5-1) at 2; Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 6) at 9–10.

[36] *See* Tr. (Rough) of Show-Cause Hr'g at 2–5.

[37] *See id.* at 3–5.

[38] *See id.* at 4.

[39] *See* Pl.'s Mot. to Deny Sanctions (Doc. 31) at 1–2; Br. in Support of Pl.'s Mot. to Deny Sanctions (Doc. 32) at 1–3.

[40] *See id.*

[41] *See* Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32) at 3.

rulebook.[42]  The response only stated that he had been unaware of the 2015 amendment.[43]  The story he told on the stand—of only having the old Federal Rules and using that book—is entirely absent from his written submissions.[44]

4. Second, in Mr. Simes's written responses to the Order to Show Cause, Mr. Simes explained that he "has a long history of legal practice in the Federal Court and has never made this legal error."[45]  If he has never made this legal error before, despite a long history of practice in federal court, it is difficult to imagine that (1) he was unaware of the 2015 amendment that shortened the service of process window of Rule 4(m) from 120 days to 90 days, or (2) he always relied on a pre-2015 rulebook.  It is true that Mr. Simes testified on the stand that "to the best of [his] knowledge" he has not had to serve parties in federal court since 2015, and that he thinks he has only had one other case in federal court since 2015.[46]  But, in addition to such testimony being hard to square with his written responses to the Order to Show Cause, this portion of his testimony is also verifiably false.  A quick search of CM/ECF shows that Mr. Simes has been plaintiff's

---

[42] *See* Pl.'s Am. Mot. to Deny Sanctions (Doc. 33) at 1–2; Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34) at 1–3.

[43] *See* Pl.'s Am. Mot. to Deny Sanctions (Doc. 33) at 2.

[44] *Compare* Tr. (Rough) of Show-Cause Hr'g at 3–4, *with* Pl.'s Mot. to Deny Sanctions (Doc. 31); Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32); Pl.'s Am. Mot. to Deny Sanctions (Doc. 33); Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34).

[45] Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32) at 2; Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34) at 2.

[46] Tr. (Rough) of Show-Cause Hr'g at 14.

counsel in six cases filed in the Eastern District of Arkansas since January 1, 2016.[47] And a quick search of those case dockets shows that Mr. Simes was responsible for service in all of them.[48]

5.     Third, Mr. Simes's testimony that he looked up Rule 4(m) in an old rulebook is in some tension with other parts of his testimony. At times, he seemed to suggest that he didn't look up the Rule and simply went off memory:

> Q: So you do not have a copy—in your office you do not have a copy of the federal rules that is post 2015?
>
> A: I don't have the new rules, no, sir.
>
> Q: Do you have a copy that is post 2015?
>
> A: No, sir. I've been relying on the computer in most instances.
>
> Q: So you do have Westlaw?
>
> A: Oh, yeah.
>
> Q: Did you look it up on Westlaw?
>
> A: Did not look up the new change, and that's what the—that was the mistake that I made.
>
> Q: Well, that is a giant mistake. Here is my significant concern. It's one thing to make that mistake in a vacuum, it's another thing when in the actual motion you are responding to the other side tells you that the service window in the rules is 90 days. So when your memory of the rule conflicts with what they've said, it would strike me that any responsible lawyer would actually look at the current rule. When

---

[47] *See, e.g.*, *Little v. Varner*, Case No. 2:23-cv-00089-BSM; *Anderson v. City of West Memphis*, Case No. 3:19-cv-00255-DPM; *Brown v. Robinson Nursing Home and Rehab. Ctr., LLC*, Case No. 4:18-cv-00319-PSH; *Anderson v. Forrest City Police Dep't*, Case No. 4:17-cv-00779-JM; *Hamilton v. Core-Mark International, Inc.*, Case No. 5:16-cv-00356-DPM; *Smith v. Gen. Motors Co.*, Case No. 5:16-cv-00283-JM. The Court "may take judicial notice of judicial opinions and public records . . . ." *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005). The Court does so here.

[48] *See Little v. Varner*, Case No. 2:23-cv-00089-BSM; *Anderson v. City of West Memphis*, Case No. 3:19-cv-00255-DPM; *Brown v. Robinson Nursing Home and Rehab. Ctr., LLC*, Case No. 4:18-cv-00319-PSH; *Anderson v. Forrest City Police Dep't*, Case No. 4:17-cv-00779-JM; *Hamilton v. Core-Mark International, Inc.*, Case No. 5:16-cv-00356-DPM; *Smith v. Gen. Motors Co.*, Case No. 5:16-cv-00283-JM. Although it is not completely dispositive of the question at hand, it is worth noting that, in *Anderson v. Forrest City Police Department*, Mr. Simes filed a Motion for an Extension of Time to Serve Process just a few days shy of the expiration of the 90-day service window. *See* Pls.' Mot. for Extension of Time (Doc. 2), Case No. 4:17-cv-00779-JM. This is fairly strong evidence that he knew, back in 2017, that the federal service window was 90 days, not 120 days.

> you saw that the other side said in their briefing that the service window under the rule was 90 days, why did you not go to Westlaw and look it up?
>
> A: Because I was under the impression, as many years as I practiced law, that that was wrong. I did not look the rule up[,] but I was under the firm impression, after practicing law for 30 years, that was not the rule. I was still looking at the old rule. That was the mistake.
>
> Q: Okay.
>
> A: And I'm embarrassed about it but that was the mistake.
>
> Q: To be perfectly honest, you should be very embarrassed about it because it is not a good faith mistake[,] or I should say maybe it's an honest mistake but it's not a reasonabl[e] one. I mean, I don't understand how at all you could make statements to the court—and [indeed] in that brief after your statement there was also a case citation. I can't understand how you could do that without going back and looking at the rule when that was the very matter in issue. Any explanation for that other than you just relied on your memory?
>
> A: Yes, sir, just relied on my memory.[49]

While there is perhaps a way to squint just right and square this testimony with Mr. Simes's old-rulebook story, the Court finds that the several inconsistencies and tensions in Mr. Simes's written and oral responses (described above) are far more likely to be an indication of prevarication and excuse-manufacturing.

6. In addition to all of this, the Court also makes a negative credibility finding against Mr. Simes based on his demeanor during his testimony. Although it is impossible to glean from the dry transcript, there were several points in his testimony when Mr. Simes got a deer-in-the-headlights look and sat silently for an unnaturally long period of time instead of answering the Court's question. Although not exclusively, these long pauses can be identified in the transcript by the Court following up with, "Do you understand the question?"[50] And many of

---

[49] Tr. (Rough) of Show-Cause Hr'g at 4–5.

[50] *See, e.g.*, *id*. at 7.

9

these moments occurred when the Court identified inconsistencies and asked Mr. Simes to reconcile them.[51] Mr. Simes's demeanor strongly suggested to the Court that Mr. Simes was concocting fabricated answers on the fly in an attempt to downplay or excuse his misconduct.[52]

7. In light of the foregoing, the Court would be justified in finding that Mr. Simes intentionally misrepresented the service window provided in Rule 4(m) in his January 2023 Brief to the Court. But the Court need not go that far. Instead, the Court finds that Mr. Simes misrepresented (in his January 2023 Brief) the service window provided in Rule 4(m) without having looked at the Rule or having looked at any relevant caselaw.

Mr. Simes's conduct constitutes a violation of Federal Rule of Civil Procedure 11(b). That Rule requires that the legal contentions made in briefs be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"[53] Mr. Simes's contention that Rule 4(m) provides for a 120-day service window was not warranted by existing law or some nonfrivolous extension-of-law or establishment-of-new-law argument.

Of course, even if it turns out to be wrong, making a statement of law that an attorney thought was accurate is not a violation of Rule 11(b)—so long as the statement was accurate "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[.]"[54] But Mr. Simes cannot benefit from this safe harbor because he did not form

---

[51] *See, e.g.*, *id*.

[52] To be fair, the suspicious, unnaturally long pauses and the deer-in-the-headlight looks mostly (if not exclusively) occurred when the Court was questioning Mr. Simes about the other misrepresentation that he had made. But the Court believes the credibility issues infected Mr. Simes's entire testimony, even if the demeanor flags were more pronounced only at certain times in his testimony. This conclusion stems not just from the seriousness of the demeanor flags, but also from the inconsistency between Mr. Simes's oral testimony and the rest of the record.

[53] Fed. R. Civ. P. 11(b)(2).

[54] Fed. R. Civ. P. 11(b).

10

his belief—that Rule 4(m) provides of a 120-day service window—after such a reasonable inquiry.[55] He made no inquiry at all, even though his opposing counsel's filings from weeks earlier clearly explained that Rule 4(m) sets forth a 90-day service window.[56] Mr. Simes's failure to check the language of the Rule was unreasonable and unacceptable in these circumstances.[57] And so his misrepresentation of the law is a sanctionable violation of Rule 11(b).

## II. The Diligent-Service-Efforts Issue

1. Mr. Simes admits that, in the November 3, 2022 Motion for an Extension of Time to Make Service, he stated that he had made diligent efforts to serve the Defendants.[58] Mr. Simes admits that, contrary to this representation, he had not made diligent efforts to serve the Defendants as of November 3, 2022.[59]

2. Mr. Simes represented to the Court that he had made diligent service efforts knowing this assertion was untrue or (at the very least) without investigating whether this statement was actually true. The Court reaches this finding of fact despite Mr. Simes's testimony that he "believed at the time that . . . efforts had been made" and that he was "under the impression" when he submitted the Motion for an Extension of Time to Make Service "that a process server had already" been directed to perform service.[60] The Court finds Mr. Simes's story incredible for the following reasons.

---

[55] *See* Tr. (Rough) of Show-Cause Hr'g at 4–5.

[56] *See id.*; Defs.' Mot. to Dismiss (Doc. 5-1) at 2; Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 6) at 8–9.

[57] Mr. Simes argued that his failure constituted excusable neglect. *See, e.g.*, Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32) at 2–3. The Court has already explained in its earlier Order why that is not so. *See* Order (Doc. 28) at 8–15. The Court adopts and incorporates those conclusions here.

[58] *See* Tr. (Rough) of Show-Cause Hr'g at 6–8.

[59] *See id.*

[60] *Id.* at 8, 9.

3. First, Mr. Simes never suggested any of this in his written responses to the Order to Show Cause.[61] That he was laboring under such a mistaken belief at the time of his Motion for an Extension of Time to Make Service would have been a very easy thing to say in his written responses. The absence of this explanation from his written submissions suggests it was a made-up rationalization that he thought of right before the hearing, or even while on the stand.

4. Second, the mistaken-belief-of-service-efforts testimony was not Mr. Simes's original answer to the Court's questions on this front. Mr. Simes initially said that he didn't know of any pre-November 3, 2022 service efforts; he had "just come out of a month long murder trial[,] and [he] was under the impression that [he] had [an] additional 30 days [to complete service] based on [his] memory."[62] This answer is at serious odds with the mistaken-belief-of-service-efforts testimony. Mr. Simes next said that the reason for the misrepresentation was because the Motion he filed "was a standard motion," a "form motion."[63] While not entirely clear, Mr. Simes's point appears to be that the misrepresentation is excusable because it's in all of his motions to extend time for service and just not a big deal. Whatever Mr. Simes meant by this, his answer is at serious odds with the mistaken-belief-of-service-efforts testimony. Mr. Simes next said "at the time [he] did not know [he] had not made those [service] efforts because of the . . . number of cases that [he is] processing all the time."[64] This answer is not the same as saying that he actually believed he had taken steps to serve the Defendants; rather, this answer is just saying he didn't know anything one way or the other.

---

[61] *See generally* Pl.'s Mot. to Deny Sanctions (Doc. 31); Br. in Supp. of Pl.'s Mot. to Deny Sanctions (Doc. 32); Pl.'s Am. Mot. to Deny Sanctions (Doc. 33); Br. in Supp. of Pl.'s Am. Mot. to Deny Sanctions (Doc. 34).

[62] Tr. (Rough) of Show-Cause Hr'g at 6.

[63] *Id.* at 6, 7.

[64] *Id.* at 8.

5. It is only after the Court's questioning implied that these excuses would not fly that Mr. Simes first brought up the idea that (1) he "found substance in the file that" suggested service efforts had been undertaken, and (2) his suggestion of diligent efforts was "based on what [he] held in [his] head[,] . . . the knowledge [he] had about the case, [and] the discussion [he] had with [his] secretary . . . that a process server had . . . already done this."[65] The shifting and mostly irreconcilable reasons for the diligent-efforts misrepresentation strongly suggest that this was not the real reason for the misrepresentation.

6. Third, Mr. Simes's support for the mistaken-belief theory is paper thin. Although he says he thought (back in November of 2022) that he found support in the case file for the idea that service efforts had been taken, he has not produced such support. And he now says there was no support for it in the file.[66] Additionally, when pressed on the basis of his November 2022 belief that a process server had already undertaken service efforts, his only attempt to support his alleged belief was saying that he had a "routine of using this certain process server" whom he spoke to "all the time[,]" and noting his "general practice" of "communicat[ing] to [his] secretary for [that process server] to make service."[67] These vague and general answers don't adequately support the specific testimony of a mistaken belief that service efforts had been undertaken in the instant case.

7. Fourth, Mr. Simes testified that the first time he realized no service efforts had been made prior to November 3, 2022, was "[w]hen [he] reviewed the file at the time the court dismissed the case."[68] The Court finds this highly incredible. On November 4, 2022, the Court denied the Plaintiff's Motion for an Extension of Time to Make Service on the grounds that the representation

---

[65] *Id.* at 9.

[66] *Id.* at 10.

[67] *Id.*

[68] *Id.*

13

of "diligent efforts" was entirely conclusory.[69] The Court made clear that a new motion might be granted if that new motion detailed what diligent efforts had been undertaken.[70] Plaintiff filed another Motion for an Extension of Time in January 2023, but this subsequent filing did not reference any diligent efforts taken before November 3, 2022.[71] This history suggests Mr. Simes knew on November 3, 2022, that he had not actually taken diligent efforts to serve the Defendants. At the very least, it suggests Mr. Simes reviewed his file in response to the Court's November 4, 2022 Order, saw then that no service efforts had been undertaken, and thus is now lying about when he first learned of this fact.

8. Fifth, although it is less than clear, it appears that Mr. Simes's testimony is that a murder trial scheduled during a significant part of September 2022 contributed to his misrepresentation concerning service of process efforts. It is not clear exactly how Mr. Simes thinks one contributed to the other. But, in any event, the evidence Mr. Simes submitted to the Court on this point—and the argument he made in his written submissions—referenced only a September 2023 trial.[72] Obviously, a September 2023 trial has no bearing on service of process in the fall of 2022.

9. In addition to all of this, the Court makes the same negative credibility determination based on demeanor that the Court made above—and for the same reasons.

10. Given the foregoing, the Court would be justified in concluding that Mr. Simes knew the diligent-service-efforts assertion was false when he made it. But the Court need not go that far. Instead, the Court finds that Mr. Simes made the statement without having any idea of its

---

[69] Order (Doc. 3).

[70] *See id*.

[71] *See* Pl.'s Mot. to Extend Time (Doc. 10) at 1–2.

[72] *See* Pl.'s Am. Mot. to Deny Sanctions (Doc. 33) at 2.

veracity. The Court finds that this is a form statement Mr. Simes includes on all such extension motions, and he generally does so without investigating in a particular case whether the statement is actually true. Certainly, in this case, he made the statement without investigating whether it was true.

Mr. Simes's actions constitute a violation of Rule 11(b). That Rule requires factual contentions to have evidentiary support.[73] Mr. Simes's contention that he had made diligent service efforts had no evidentiary support. That's because it was completely untrue.

Of course, even if it turns out to be wrong, a statement of fact that an attorney thought was accurate, but isn't, is not a violation of Rule 11(b)—so long as the statement was accurate "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[.]"[74] But Mr. Simes cannot benefit from this safe harbor because he did not form his belief (that diligent efforts to serve the Defendants had been made) after such a reasonable inquiry. He made no inquiry at all, which was unreasonable and unacceptable in these circumstances. So his misrepresentation of fact is a sanctionable violation of Rule 11(b).

**III.    Sanctions**

"A sanction imposed under" Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[75] Where the violation is raised by the court *sua sponte*, the sanction "may include nonmonetary directives" as well as "an order to pay a penalty into court . . . ."[76]

---

[73] Fed. R. Civ. P. 11(b)(3).

[74] Fed. R. Civ. P. 11(b).

[75] Fed. R. Civ. P. 11(c)(4).

[76] *Id.*

The Court has serious concerns that Mr. Simes does not fully appreciate the gravity of the professional misconduct in which he has engaged. At the show-cause hearing, Mr. Simes refused to agree that his conduct of the case was sloppy, and he sought to minimize the seriousness of his misrepresentation of Rule 4(m).[77] Mr. Simes lied to the Court on the stand. He submitted written responses to the Order to Show Cause with a plethora of spelling, grammar, and citation errors. None of this suggests to the Court that Mr. Simes has really learned his lesson. And, of course, there were *two separate* instances of professional misconduct that merit sanctions here.

Mr. Simes said he did not charge a fee in this case.[78] If he had, the Court would have likely set the monetary portion of the sanctions based on the amount of the fee he made or would have made in this case. The next best option is to calculate the monetary sanction as a small percentage of Mr. Simes's yearly income from his law practice—enough to leave an impression but not so much that it is excessive compared to the problematic conduct at issue here. In the Court's view, given the mix of circumstances at issue in this case, the right percentage is around four percent—essentially two percent per each instance of misconduct.

Mr. Simes testified that his average, annual take-home pay is about $150,000.[79] Four percent of that is $6,000. However, the Court will reduce that amount by $2,000 in light of the likely cost of the non-monetary sanctions the Court also imposes. Thus, Mr. Simes is sanctioned $4,000 for his violations of Rule 11(b). This monetary sanction is immediately due and payable. Mr. Simes must pay this amount to the Clerk of the Court within twenty-one (21) days of the date of this Order. Failure to timely pay the monetary sanction will result in the sanction amount

---

[77] *See* Tr. (Rough) of Show-Cause Hr'g at 13–14.

[78] *See id.* at 15.

[79] *See id.*

accruing interest at a rate of four percent monthly, with interest beginning to accrue on any unpaid portion of the sanction twenty-two (22) days after the date of this Order.

The non-monetary sanctions are as follows: ***In addition*** to whatever normal continuing legal education (CLE) credit hours are required of Mr. Simes in the state (or states) in which he is licensed to practice law, Mr. Simes must complete an extra twelve (12) credit hours of ***in-person*** CLE within one year of the date of this Order. Three of the twelve credit hours must be for courses focused on the Federal Rules of Civil Procedure. And six of the twelve credit hours must count as ethics credit, including at least two courses that cover an attorney's responsibilities when making representations to a court. Mr. Simes must provide documentation to the Court that the courses were attended in-person and timely completed within one year of the date of this Order. He must also provide a declaration that these courses were in addition to whatever CLE courses he took to meet his state's (or states') CLE requirements. Failure to timely and properly complete the required CLE courses (or to submit the required documentation) will result in an additional and significant monetary sanction.

IT IS SO ORDERED this 18th day of December 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE